UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WALTER INGRAM and XENIA
INGRAM,

    Plaintiffs,

v.                                       CASE NO: 8:11-cv-1461-T-23EAJ

WELLS FARGO BANK, N.A., and
FLORIDA DEFAULT LAW GROUP, P.L.,

    Defendants.
_____/

## **ORDER**

The *pro se* plaintiffs' third amended complaint (Doc. 29) alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Florida Consumer Collection Practices Act, Section 559.55 *et seq.*, Florida Statutes, and Florida common law. A September 14, 2011, order (Doc. 28) instructs the defendants to direct any defensive motion only to the Fair Debt Collection Practices Act. Accordingly, each defendant moves (Docs. 30, 31) to dismiss each FDCPA claim. The plaintiffs respond (Docs. 33, 34) in opposition.

<u>Allegations of the Third Amended Complaint (Doc. 29)</u>

The plaintiffs – Walter and Xenia Ingram, husband and wife – own and lease the property subject to this mortgage dispute. On May 26, 2004, the plaintiffs received from defendant Wells Fargo, N.A., a $197,000 loan, secured by a mortgage

on the property. The defendant law firm, Florida Default Law Group, P.L., represented Wells Fargo. (¶¶ 7, 9)

In July, 2010, Wells Fargo denied the plaintiffs' application for a loan modification. On July 22, 2010, Wells Fargo sent a third-party representative to the property to change the locks, mow the lawn, and cover the pool. The representative informed the plaintiffs of the imminent foreclosure. Unaware of the denial of the loan modification, the plaintiffs phoned Wells Fargo, which cited a $5,684.73 arrearage. On the same day, however, Wells Fargo notified the plaintiffs of a July 8, 2010, approval of the loan modification. Wells Fargo instructed the plaintiffs to contact Florida Default, yet Florida Default "had no record of the foreclosure or the modification." (¶ 16)

On July 26, 2010, the plaintiffs paid (1) $1,709.81, the mortgage payment for May, 2010, and (2) $3,989.92, the remaining balance according to Wells Fargo to bring the loan current. On July 27, 2010, the plaintiffs received from Florida Default a "Hello Letter," dated July 22, 2010, advising that Wells Fargo retained Florida Default "with regards to its interests in the promissory Note and Mortgage." (¶ 22 (citing Doc. 6-1, at 48)) Additionally, the "Hello Letter" stated that Wells Fargo accelerated the loan and that Florida Default is "a debt collector . . . . attempting to collect a debt." (¶ 23 quoting (Doc. 6-1, at 48))

Additionally, on July 27, 2010, the plaintiffs phoned Wells Fargo to discuss the July 26, 2010, payments and determine the status of the loan. Wells Fargo directed the plaintiffs to Florida Default for a "re-instatement letter." On the same day, July 27, 2010, the plaintiffs by email to Florida Default requested re-instatement. In two "re-instatement letters" – dated July 29, 2010, and August 2, 2010 (Doc. 18-1, at p.1-8) – Florida Default demanded $9,798.29, including $6,839.24 for the arrearage on the loan from May through August. Additional charges include an accumulated late fee, a property inspections fee, an attorney fee, a title search fee, a title examination fee, a filing fee, a recording fee, a service of process fee, and a mediation fee. The re-instatement amount was valid through August 24, 2010.

On August 2, 2010, Florida Default, on behalf of Wells Fargo, filed a foreclosure action in the Circuit Court for Pasco County, Florida. On August 3, 2011, "[e]ven though [the plaintiffs] disagreed with [the] charges," the plaintiffs paid Florida Default $2,348.87. (¶ 44) On August 5, 2010, Florida Default returned the $2,348.87 and "continued to demand the total payment" provided in the "re-instatement letters." (¶ 45) On August 11, 2010, the plaintiffs paid to Florida Default an additional $1,800. On August 16, 2010, seeking to fully re-instate the loan based on the amount stated in the "re-instatement letters," the plaintiffs paid Florida default an additional $4,008.37. On August 18, 2010, Florida Default refunded

$442.40, and on August 31, 2010, the Florida Default on behalf of Wells Fargo voluntarily dismissed the foreclosure action.

Nine months later, on May 10, 2011, the defendants "communicated fraudulent information to the tenants" residing on the property and stated that "the home was still in active foreclosure." (¶ 73) A tenant phoned Florida Default, which incorrectly confirmed an active foreclosure. In response, the tenants vacated the lease on May 31, 2011. The plaintiffs allege seven counts of violations of the FDCPA.

## Discussion

"The FDCPA imposes liability on 'debt collectors' who fail to comply with its provisions when collecting a 'debt.'" *Buckman v. American Bankers Ins. Co. of Fla.*, 115 F.3d 892, 894-95 (11th Cir. 1997). An FDCPA claim requires that "'(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt[] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Diaz v. Fla. Default Law Group, PL*, 3:09-cv-524, 2011 WL 2456049, *2 (M.D. Fla. Jan. 3, 2011) (Corrigan, J.) (quoting *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000)).

Wells Fargo's motion to dismiss argues correctly that the plaintiffs' FDCPA claims against Wells Fargo fail because Wells Fargo is not a "debt collector" under the FDCPA. The FDCPA defines a debt collector as "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due

another." § 1692a(6). However, "a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985); *Belin v. Litton Loan Servicing, LP*, No. 8:06-cv-760, 2006 WL 1992410, *2 (M.D. Fla. July 14, 2006) (Bucklew, J.).

As the motion to dismiss notes, the plaintiffs allege that Wells Fargo "claims to" hold the note and the mortgage, (Doc. 29, ¶¶ 7, 8) that the plaintiffs owe a debt to Wells Fargo, (Doc. 29, ¶ 8), and that Wells Fargo "is a creditor, who extended credit" to the plaintiffs. (Doc. 29, ¶ 8) As the plaintiffs' creditor, Wells Fargo is not a "debt collector," and the plaintiffs fail to state an FDCPA claim against Wells Fargo. *See Frazier v. HSBC Mortgage Servs., Inc.*, No. 8:08-cv-2396, 2009 WL 4015574, *7 (M.D. Fla. Nov. 19, 2009) (Bucklew, J.); *Acosta v. Campbell*, 6:04-cv-761, 2006 WL 3804729, *7 (M.D. Fla. Dec. 22, 2006) (Antoon, J.); *Kimber v. Federal Fin. Corp.*, 668 F. Supp. 1480, 1486 (M.D. Ala. 1987) ("With §§ 1692a(4) and 1692a(6)(A), Congress clearly sought to exclude creditors – that is, those who extend credit and collect their own debts – from the Act's coverage.").

Characterizing the allegedly illegal conduct as "simply the filing of a foreclosure action and the service of its related documents," Florida Default cites *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 461 (11th Cir. 2009), and argues that each FDCPA allegation fails because Florida Default acted pursuant to

the foreclosure process. *Warren* holds that, except under Section 1692f(6), "enforcement of a security interest through the foreclosure process is not debt collection for purposes of the [FDCPA]."[*] *Warren,* 342 F. App'x at 461; *see also Diaz*, 2011 WL 2456049, at *2-3 (holding that a Florida Default "Hello Letter" – one substantively identical to the July 27, 2010, "Hello Letter" in this case – is not "debt collection" despite the letter's statement that Florida Default "is a debt collector . . . attempting to collect a debt"). Thus, Florida Default implicitly argues that each allegedly illegal action falls within the definition of "foreclosure process."

Florida Default sent each letter before the voluntary dismissal of the foreclosure action – including the July 27, 2010, "Hello Letter" – in the role of an attorney enforcing "a security interest through foreclosure." However, in Count Three, the plaintiffs allege that Florida Default on May 10, 2011, communicated the plaintiffs' loan status to the plaintiffs' tenants. The communication, which allegedly occurred nine months after the voluntary dismissal of the foreclosure action, falls outside the "foreclosure process." Thus, only Count Three, the alleged violation of Section 1692c(b) remains.

Subject to limited exceptions, Section 1692c(b) prohibits a debt collector from "communicat[ing], in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise

---

[*] The plaintiffs allege against Florida Default no violation of Section 1692f(6).

- 6 -

permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." Florida Default cites *Acosta v. Campbell*, 309 F. App'x 315, 320 (11th Cir. 2009), and argues that the May 10, 2011, communication with the tenants was not a "communication" under the FDCPA. In *Acosta*, the debtor argued that the defendants violated Section 1692c(b) by sending to a third-party a letter with financial information about the debtor's first mortgage on a residence. The third-party was an attorney who represented the second mortgage holder on the debtor's same residence. The second mortgage holder appeared as a defendant with the debtor in the underlying foreclosure action initiated by the first mortgage holder. Reasoning that even without the letter the underlying foreclosure action would reveal the sensitive information to the attorney of the second mortgage holder, *Acosta* concludes, "a communication issued from [a] foreclosing party, or its counsel, regarding *the foreclosure*, does not violate 15 U.S.C. § 1692c(b)." (emphasis added)

Because no foreclosure persists on May 31, 2011, and because no allegation reveals that the communication with the tenant mentioned an issue originating from the foreclosure, Florida Default's reliance on *Acosta* is misplaced. The third amended complaint states that Florida Default (on Wells Fargo's behalf) voluntarily dismissed the underlying foreclosure action nine months earlier. Accordingly, the plaintiffs state a claim under Section 1692c(b).

Conclusion

Wells Fargo's motion (Doc. 30) is **GRANTED**, and Counts One through Seven against Wells Fargo are **DISMISSED**. Florida Default's motion (Doc. 31) is **GRANTED IN PART**, and Counts One, Two, and Four through Seven against Florida Default are **DISMISSED**. Within **twenty-one days** of this order, the defendants shall answer or otherwise defend the remaining claims.

ORDERED in Tampa, Florida, on January 26, 2012.

*Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE